UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FRANK P. BUTLER,            )
                           )
          Plaintiff,       )    Civil Action No.
                           )    12-10337-DPW
v.                         )
                           )
DEUTSCHE BANK TRUST COMPANY )
AMERICAS AS TRUSTEE FOR     )
RALI 2007 QS3,             )
                           )
          Defendant.       )

MEMORANDUM AND ORDER
August 14, 2012

This case involves alleged inadequacies in the assignment and foreclosure of a mortgage.  Plaintiff Frank P. Butler, the mortgagor, claims that Defendant Deutsche Bank Trust Company Americas as Trustee for RALI 2007 QS3 ("Deutsche Bank") has wrongfully foreclosed on two separate occasions, slandered the title of his property, and violated G.L. c. 93A.  Deutsche Bank has moved to dismiss the Complaint.  Finding the alleged inadequacies are not based on actionable legal theories that support Butler's claims, I will grant Deutsche Bank's motion.

**I.  BACKGROUND**

***A.   Factual Background***

**1.   Mortgage, Assignments, and Foreclosures**

On January 31, 2007, Butler executed a promissory note payable to Homecomings Financial, LLC, in the amount of $370,000.00.  The note was secured by a mortgage on the property

at 29 Town Hill Road, Quincy, Massachusetts.  The mortgage identified the "Lender" as Homecomings Financial, LLC.  It stated that Mortgage Electronic Registration Systems, Inc. ("MERS"), "a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns" was "the mortgagee under this Security Instrument."

An assignment of the Butler mortgage, dated December 1, 2009, was filed at the Norfolk Registry of Deeds.  It stated that MERS assigned the mortgage, "note and claim secured thereby," to "Deutsche Bank Trust Company Americas as Trustee, 1100 Virginia Drive, Fort Washington, PA 19034."  The assignment did not identify the trust for which Deutsche Bank was acting as trustee. Deutsche Bank is the trustee for approximately 1,900 securitized trusts.  The assignment was signed by "Jeffrey Stephan, Vice President," on behalf of MERS.

On December 7, 2009, Deutsche Bank filed a complaint in Massachusetts Land Court for authority to foreclose Butler's mortgage under the Servicemembers Civil Relief Act.  The Land Court case was identified as No. 09-MISC-417886.  On March 30, 2010, the Land Court entered Judgment for Entry and Sale in that action.

A second assignment of the mortgage was thereafter filed at the Norfolk Registry of Deeds.  It stated that MERS assigned the "mortgage secured thereby" to "Deutsche Bank Trust Company

2

Americas as Trustee for RALI 2007QS3, 1100 Virginia Drive, Fort Washington, PA 19034." This assignment was also signed by Jeffrey Stephan. It was not dated, but a notary public signed the document below a statement that Jeffrey Stephan had appeared before her on January 22, 2010, and acknowledged that he signed the assignment voluntarily.

On July 15, 2010, Deutsche Bank filed a second complaint in Massachusetts Land Court for authority to foreclose Butler's mortgage under the Servicemembers Civil Relief Act. The second Land Court case was identified as No. 10-MISC-434319. On February 7, 2011, Deutsche Bank received a judgment in that case that it was "authorized and empowered to make an entry and sell the property covered by the mortgage" because "it appear[ed] that the record owner [was] not entitled to the benefits of [the Servicemembers Civil Relief] Act."

A third assignment of the mortgage, dated March 2, 2011, was filed at the Norfolk Registry of Deeds. It was labeled "Confirmatory Assignment" and stated that it confirmed and amended the second assignment. It stated that "Deutsche Bank Trust Company Americas as Trustee" assigned "said mortgage" to "Deutsche Bank Trust Company Americas as Trustee for RALI 2007QS3, 1100 Virginia Drive, Fort Washington, PA 19034." This assignment was signed by Michelle Swaim as "Authorized Officer" for "Deutsche Bank Trust Company Americas as Trustee."

On May 25, 2011, Deutsche Bank conducted a foreclosure
auction of the property at 29 Town Hill Road.  On November 30,
2011, Deutsche Bank filed a foreclosure deed and affidavit of
sale at the Norfolk Registry of Deeds stating that Deutsche Bank
had purchased the property at the foreclosure auction for
$230,327.77.  Also on that date, Deutsche Bank filed a
Certificate of Entry certifying entry onto the property on May
25, 2011.

On March 8, 2012, Deutsche Bank conducted a second
foreclosure auction of the property at 29 Town Hill Road.  On
April 18, 2012, Deutsche Bank filed a foreclosure deed and
affidavit of sale at the Norfolk Registry of Deeds stating that
Deutsche Bank had purchased the property at the foreclosure
auction for $200,000.00.

**2.    MERS**

MERS was the original mortgagee named on Butler's mortgage.
A "Case Law Outline" issued by MERS in the second quarter of 2011
stated that the "sole purpose" of MERS "is to be the mortgagee of
record and nominee for the beneficial owner of the mortgage
loan."  It explained that "[t]he MERS® System is a national
electronic registry system that tracks the changes in servicing
rights and beneficial ownership interests in mortgage loans that
are registered on the registry."

The Case Law Outline stated:

> No mortgage rights are transferred on the MERS® System.  The MERS® System only tracks the changes in servicing rights and beneficial ownership interests . . . . Beneficial ownership interests are sold via endorsement and delivery of the promissory note.  This is a non-recordable event.  The MERS® System tracks [this] transfer[].  MERS remains the mortgage lien holder in the land records when these non-recordable events take place.  Therefore, because MERS remains the lien holder, there is no need for any assignments.  Transactions on the MERS® System are not electronic assignments.  Because MERS only holds lien interests on behalf of its Members, when a mortgage loan is sold to a non-MERS member, an assignment of mortgage is required to transfer the mortgage lien from MERS to the non-MERS member.  Such an assignment is subsequently recorded in the land records providing notice as to the termination of MERS's role as mortgagee.

It further explained that "[r]egistering the mortgage loan information on the MERS® system is separate and apart from the function that county recorders perform."

### 3.   Jeffrey Stephan

Jeffrey Stephan signed the first two assignments of Butler's mortgage, dated December 1, 2009, and January 22, 2010. Jeffrey Stephan has been identified by an article in the Washington Post as a "robo-signer."  The article, dated September 22, 2010, stated that Stephan gave depositions in which he acknowledged "that he would glance at a borrower's name, the debt owed and a few other numbers, but simply assumed most of the information in the files was correct."

Stephan worked for GMAC Mortgage, which in 2011 entered into a consent agreement with the Board of Governors of the Federal Reserve System and the Federal Deposit Insurance Corporation with

regard to its foreclosure processes.  The consent agreement required GMAC to retain independent consultants to review foreclosures pending or completed between January 1, 2009, and December 31, 2010.  Butler's file was among those identified as eligible for independent review.  In 2012, GMAC Mortgage (rebranded as Ally Bank) settled charges of abusive and negligent foreclosure practices with forty nine states, including Massachusetts.

### 4.   RALI 2007 QS3 Trust Governing Documents

Deutsche Bank owned the mortgage on the property at Town Hill Road as trustee of the RALI 2007 QS3 Trust.  The RALI 2007 QS3 Trust is governed by its Pooling and Servicing Agreement and Prospectus Supplement.  These documents describe the transfer of the loans from the originators to the trustee as including two intermediary transferees: the loans are sold from the originators to the sponsor and master servicer, who then sells the loans to the depositor, who then sells the loans to the trustee.  The documents authorize the depositor, Residential Accredit Loans, Inc. (which is not a member of MERS), to transfer mortgage loans to the Deutsche Bank Company Americas, as trustee, on or before the closing date of February 27, 2007.

### 5.   Rental Payments

As a consequence of Deutsche Bank's assertions that it had foreclosed on and owned the property at Town Hill Road, Butler

6

refused to accept further rental payments from the tenants at the property.

**B.   *Procedural Background***

On January 20, 2012, Butler, then pro se, filed a motion for a preliminary injunction and an underlying verified complaint in Norfolk Superior Court.  On January 25, 2012, the state court issued a temporary restraining order prohibiting Deutsche Bank from foreclosing until a further hearing scheduled for February 2, 2012.  On February 2, 2012, Butler's motion for a preliminary injunction was allowed in the state court and Deutsche Bank was enjoined from foreclosing until February 23, 2012.  On February 22, 2012, Deutsche Bank removed the case to this Court.  Butler did not move to renew the preliminary injunction order; Deutsche Bank conducted the second foreclosure sale in March, 2012, after the preliminary injunction order had expired.

Butler filed an Amended Complaint on May 4, 2012.  The Amended Complaint contains four counts: (1) violation of G.L. c. 93A; (2) wrongful foreclosure with regard to the May 25, 2011, auction; (3) wrongful foreclosure with regard to the March 8, 2012, auction; and (4) slander of title.  He seeks to set aside the foreclosure and collect damages for lost rent.  Deutsche Bank has filed a motion to dismiss all counts of the Amended Complaint.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  All well-pleaded factual allegations in the complaint must be taken as true and all reasonable inferences must be drawn in the pleader's favor.  *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) (en banc).

The alleged facts must "nudge the[] claims across the line from conceivable to plausible" or the complaint is subject to dismissal.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007).  A court should "disregard statements in the complaint that merely offer legal conclusion[s] couched . . . as fact[] or threadbare recitals of the elements of a cause of action." *Rodriguez-Ramos v. Hernandez-Gregorat*, 685 F.3d 34, 40 (1st Cir. July 12, 2012) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)) (alterations in original) (internal quotation marks omitted).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Berner v. Delahanty*, 129 F.3d 20, 25

(1st Cir. 1997) (quoting *Gooley v. Mobil Oil Corp,*, 851 F.2d 513, 515 (1st Cir. 1988)).

## III.  ANALYSIS

### A.  *Validity of Foreclosures*

All four counts in the Amended Complaint depend on the invalidity of one or both of the foreclosure sales.  Count I alleges that Deutsche Bank wrongfully created the appearance that a legally valid foreclosure auction took place in violation of G.L. c. 93A.  Count II alleges that Deutsche Bank wrongfully foreclosed at the May 25, 2011, auction.  Count III alleges that Deutsche Bank wrongfully foreclosed at the March 8, 2012, auction.  Count IV alleges that Deutsche Bank engaged in slander of title when it recorded the foreclosure deeds at the Registry of Deeds following the two foreclosure auctions.

Butler offers a number of theories in support of his claims as to the invalidity of one or both of the foreclosure auctions. First, Butler contends that the foreclosure auctions were invalid because Deutsche Bank did not hold the note secured by the mortgage on the Town Hill Road Property.  Second, Butler contends that the foreclosure auctions were invalid because the mortgage assignments were not made in compliance with the Pooling and Servicing Agreement.  Third, Butler contends that the foreclosure auctions were invalid because assignments from MERS are invalid. Fourth, Butler contends that the foreclosure auctions were

invalid because the first and second assignments were signed by a known robo-signer.  Fifth, Butler contends that the foreclosure auctions were invalid because the first assignment was made to "Deutsche Bank as Trustee" without identifying the relevant trust.  Finally, Butler contends that Deutsche Bank has admitted the invalidity of the first foreclosure sale.  None of these theories is persuasive.

### 1.   Foreclosure by a Mortgagee Without the Note

Butler contends that both foreclosure sales conducted by Deutsche Bank were invalid because Deutsche Bank did not hold the note secured by the mortgage on the property at Town Hill Road. Deutsche Bank contends that a foreclosing mortgagee need not hold the underlying debt.  After the initial briefing was submitted regarding Deutsche Bank's motion to dismiss, the Massachusetts Supreme Judicial Court decided *Eaton v. Federal National Mortgage Association*, 969 N.E.2d 1118 (Mass. 2012), in which it addressed precisely this issue.

In *Eaton*, the Supreme Judicial Court "construed the term 'mortgagee' in G.L. c. 244, § 14 [the statute governing foreclosure under the power of sale], to mean a mortgagee who also holds the underlying mortgage note."  *Eaton*, 969 N.E.2d at 1129.  Accordingly, the Supreme Judicial Court held that the foreclosure sale must be conducted by the note holder or by one who acts as an authorized agent of the note holder.  *Id.* at 1130.

However, the Supreme Judicial Court exercised its discretion to apply the rule prospectively only, "to mortgage foreclosure sales for which the mandatory notice of sale [is] given after the date of [the *Eaton*] opinion," *i.e.*, June 22, 2012.  *Id.* at 1333.

Both of the foreclosures at issue were noticed prior to June 22, 2012.  Consequently, whether Deutsche Bank held the note does not affect the validity of the foreclosure sales.  *See Woods v. Wells Fargo Bank, N.A.*, C.A. No. 11-cv-30216-MAP, 2012 WL 2577580, at *2 (D. Mass. July 3, 2012) ("[A]s a pre-*Eaton* mortgagee, [the bank] would be entitled to foreclose even without proof that it was also the note holder or its agent.").  Butler's first contention fails to provide an actionable legal theory based on which his Amended Complaint may be maintained.

   **2.   Failure to Comply with Pooling and Servicing Agreement**

Butler alleges that the assignments were made in violation of the requirements of the Pooling and Servicing Agreement ("PSA") that governs the RALI 2007 QS3 Trust.  In particular, Butler alleges that the mortgage was not assigned from the correct entity to Deutsche Bank (the PSA states that the depositor, Residential Accredit Loans, Inc., will transfer the loans to the trust; instead, MERS made the assignment) and that the assignments were made too late (the PSA states that the mortgage loans should be transferred to Deutsche Bank on or before February 27, 2007; instead, the first of the three

11

assignments was dated December 1, 2009).  He contends that due to these violations of the PSA, the assignments were invalid. Consequently, he argues, Deutsche Bank was not the mortgagee at the time of the foreclosure sales and the foreclosures were void.

Courts in this district are in agreement that a mortgagor lacks standing to challenge the assignment of his mortgage directly if he is neither a party to nor a third-party beneficiary of the assignment contract.  *See Armand v. Homecomings Fin. Network*, Civil Action No. 12-10457-LTS, 2012 WL 2244859, at *3 (D. Mass. June 15, 2012); *Oum v. Wells Fargo*, 842 F. Supp. 2d 407, 412-15 (D. Mass. 2012); *In re Marron*, 462 B.R. 364, 374 (Bankr. D. Mass. 2012); *Wenzel v. Sand Canyon Corp.*, 841 F. Supp. 2d 463, 477-79 (D. Mass. 2012); *Peterson v. GMAC Mortg., LLC*, Civil Action No. 11-1115-RWZ, 2011 WL 5075613, at *2-4 (D. Mass. Oct. 25, 2011); *Kiah v. Aurora Loan Servs., LLC.*, Civil Action No. 10-40161-FDS, 2011 WL 841282, at *6 (D. Mass. March 4, 2011).

However, "the question of whether [a mortgagor has] standing to challenge [an] assignment is different from the question of whether [he has] standing to challenge the foreclosure on the basis that [the foreclosing entity] did not properly hold the mortgage at the time of the foreclosure." *Wenzel*, 841 F. Supp.

2d at 479 n.16.[1]  A number of decisions have held that mortgagors
have standing to challenge a foreclosure sale as void due to an
allegedly invalid assignment.  *See In re Lacey*, Bankr. No. 10-
19903-JNF, 2012 WL 2872050, at *16-17 (Bankr. D. Mass. July 12,
2012); *In re Bailey*, 468 B.R. 464, 473-76 (Bankr. D. Mass. 2012);
*Rosa v. Mortg. Elec. Sys., Inc.*, 821 F. Supp. 2d 423, 429 n.5 (D.
Mass. 2011).  Others have held the opposite.  *See Woods*, 2012 WL
2577580, at *2-3; *Armand*, 2012 WL 2244859, at *3-4; *McBridge v.
Am. Home Mortg. Servicing Inc.*, Civil Action No. 11-10998-RWZ,
2012 WL 931247, at *3 (D. Mass. March 19, 2012).

I find the former group of decisions persuasive.  Only a
mortgagee or his executors, administrators, successors or assigns
may exercise the statutory power of sale.  G.L. c. 183, § 21.
The Massachusetts Supreme Judicial Court has held that "[a]ny

---

[1]  Deutsche Bank contends that an assignment is a contract,
and "[f]or a party to mount an action based on a contract, she
must either be a party to the contract at issue or an intended
third-party beneficiary."  For this proposition, Deutsche Bank
cites *Edelkind v. Fairmont Funding, Ltd.*, 539 F. Supp. 2d 449 (D.
Mass. 2008).  Deutsche Bank misinterprets *Edelkind*.  *Edelkind*
states if an individual is neither a party to a contract nor an
intended third-party beneficiary, the individual "lacks standing
to bring *a breach of contract claim* against" a party to the
contract.  *Edelkind*, 539 F.2d at 454 (emphasis added).  Deutsche
Bank fails to recognize the distinction noted in *Wenzel*, 841 F.
Supp. 2d 463, 479 n.16, above.  Butler and other mortgagors
bringing lawsuits for wrongful foreclosure based on invalid
assignments are not bringing *breach of contract* claims against
the purported assignees for breach of the assignments of their
mortgages.  A wrongful foreclosure lawsuit may be based on an
assignment contract without directly challenging the assignment
by means of a breach of contract suit.

effort to foreclose by a party lacking 'jurisdiction and
authority' to carry out a foreclosure . . . is void." *Ibanez*,
941 N.E.2d at 50.  A wrongful foreclosure action may be brought
to set aside a void foreclosure.  *See Rogers*, 47 N.E. at 604
(allowing mortgagor in tort action who was foreclosed upon in a
void foreclosure to elect between full damages or recovering the
property).  Consequently, a mortgagor may bring a wrongful
foreclosure action to set aside a foreclosure conducted by an
entity that was never validly assigned the mortgage.

Mortgagors challenging foreclosure sales that are void due
to invalid assignments have standing to do so because they have
demonstrated "a concrete and particularized injury in fact, a
causal connection that permits tracing the claimed injury to the
defendant's actions, and a likelihood that prevailing in the
action will afford some redress for the injury." *Antilles Cement
Corp. v. Fortuno*, 670 F.3d 310, 317 (1st Cir. 2012) (quoting
*Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council*, 589
F.3d 458, 467 (1st Cir. 2009)).  In *In re Bailey*, Bankruptcy
Judge Boroff succinctly stated why mortgagors such as Butler meet
the standing requirements:

> The injury to the [mortgagor] is the purported termination
> of her equity of redemption in the Property by a party who
> had no authority to foreclose that equity of redemption.  If
> [the foreclosing entity] did not hold the Mortgage at the
> time it foreclosed, then the injury is directly traceable to
> [the foreclosing entity], as is the allegedly invalid
> foreclosure by [the foreclosing entity] that constitutes the
> [mortgagor's] claimed injury.  Should the Court determine

14

> that the Foreclosure Sale is void, the [mortgagor] will
> retain the equity of redemption--an interest in the Property
> that cannot be lightly disregarded.

*In re Bailey*, 468 B.R. at 475-76.  "To reject any argument which pertains to assignments out of hand would eviscerate the holding of *Ibanez* and deprive mortgagors of the most valuable remedy they have to protect their equity of redemption."  *In re Lacey*, 2012 WL 2872050, at *17.

I do not, however, hold that a mortgagor has standing to challenge a foreclosure on the basis of just any potentially invalidating deficiency in an assignment.[2]  Massachusetts case law distinguishes between void and voidable assignments.  *See, e.g., Serv. Mortg. Corp. v. Welson*, 200 N.E. 278, 280 (Mass. 1936); *Murphy v. Barnard*, 38 N.E. 29, 31 (Mass. 1894); *McCarty v. Murray*, 69 Mass. 578, 580 (1854).  If an assignment is voidable, but has not been avoided, then the assignee has legal title to convey to the purchaser at a foreclosure sale.  If an assignment is void, then the assignee was assigned nothing and has nothing to convey to the purchaser at the foreclosure sale.  Where a "grantor has nothing to convey . . . [t]he purported conveyance is a nullity, notwithstanding the parties' intent."  *Bongaards v.*

---

[2]  Indeed, the failure to distinguish between types of deficiencies characterizing assignments appears to be the root of the divide in the case law in this district.

*Millen*, 793 N.E.2d 335, 339 (Mass. 2003).[3]

Here, however, Butler fails to allege facts or present legal argument sufficient to establish that the assignments to Deutsche Bank were void due to their failure to comply with the Pooling and Servicing Agreement.  "Even if th[e] assignment[s] were somehow violative of the PSA, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, neither the PSA nor those consequences would render the assignment itself invalid."  *In re Samuels*, 415 B.R. 8, 22 (Bankr. D. Mass. 2009). Because Butler has not alleged sufficient facts to establish that the assignment is invalid, he has not alleged sufficient facts to establish that the foreclosure is void under the theory that he advances here.

This conclusion is in accordance with multiple decisions in this district holding that a mortgagor does not have standing to challenge a foreclosure on the basis of the non-compliance of an assignment with the provisions of the PSA governing a foreclosing trust.  *See Juarez v. U.S. Bank Nat. Ass'n*, Civil Action No. 11-10318-DJC, 2011 WL 5330465, at *4 (D. Mass. Nov. 4, 2011); *In re Correia*, 452 B.R. 319, 324 (1st Cir. BAP 2011) (per curiam); *In re Almeida*, 417 B.R. 140, 149 (Bankr. D. Mass. 2009); *In re Samuels*, 415 B.R. at 22.  *Cf. In re Lacey*, 2012 WL 2872050, at

---

[3] As a general matter, few, if any, mortgagors will have standing to challenge assignments that are merely voidable (by particular parties) as opposed to void (and a nullity).

*17 (distinguishing between a challenge to a foreclosure based on an invalid assignment as a general proposition and a challenge to a foreclosure based on an assignment's violation of the PSA governing the trust); *In re Bailey*, 468 B.R. at 474 (same). I am persuaded by these decisions and hold that Butler's second contention does not provide an actionable legal theory upon which his Amended Complaint may be maintained.

### 3.   MERS

Butler contends that both foreclosure sales were invalid because the assignments to Deutsche Bank were made by MERS. He argues that MERS does not have the power to assign a mortgage under Massachusetts law and that these assignments are consequently invalid. He cites no case law in support of this proposition.[4] By contrast, a number of decisions in this district hold that MERS has the power to assign a mortgage. *See, e.g., Culhane v. Aurora Loan Servs. of Neb.*, 826 F. Supp. 2d 352, 367-78 (D. Mass. 2011); *Rosa*, 821 F. Supp. 2d at 429-30; *In re Marron*, 455 B.R. 1, 5-8 (Bankr. D. Mass 2011); *Aliberti v. GMAC*

---

[4]   The development of MERS presents a number of issues regarding the traditional process of land title recordation. An overview and certain arguments for resolutions of the issues has been provided by Professor Peterson. Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory*, 53 Wm. & Mary L. Rev. 111 (2011). In this case I am bound, of course, to apply current law – not proposed reforms – to the role of MERS in the transactions at the core of the parties' dispute.

*Mortg., LLC*, 779 F. Supp. 2d 242, 249 (D. Mass. 2011); *In re Lopez*, 446 B.R. 12, 18-19 (Bankr. D. Mass. 2011).

The terms of the mortgage contract identify MERS as the "nominee" of the note holder.  A "nominee" is a "person designated to act in place of another, usu[ally] in a very limited way" or a "party who holds bare legal title for the benefit of others." *Black's Law Dictionary* 1149 (9th ed. 2009). This division of mortgagee/nominee and note holder reflects the distinction between the mortgage and the note (which can travel separately) under Massachusetts law.  *See Eaton*, 969 N.E.2d at 1124-26.  Moreover, the concept of a nominee holding title for an owner of a beneficial interest is known and accepted in the Commonwealth.  *See Morrison v. Lennett*, 616 N.E.2d 92, 94 (Mass. 1993) ("A nominee trust is often used to hold legal title to real estate so that the identity of the trust beneficiary may remain undisclosed.").

Butler contends that MERS cannot assign a mortgage because it has admitted, in its Case Law Outline, that it does not make assignments.  Butler misunderstands that document.  The Outline states that "[t]ransactions *on the MERS® System* are not electronic assignments." (emphasis added).  This does not mean that assignments recorded *at the Registry of Deeds* are not assignments; instead, it means only that transactions within MERS' electronic system reflecting the assignment of the

beneficial interest (i.e., the note) are not assignments of the mortgage.  Although Butler conflates the two, the Case Law Outline is clear that "[r]egistering the mortgage loan information *on the MERS® system* is separate and apart from the function that county recorders perform." (emphasis added).

Second, Butler contends that "[t]he flaw in MERS 'theory' is that the owner of the beneficial interest in the borrower's promissory note[] does not automatically hold an interest in the borrower['s] mortgage as the note and mortgage may travel independently in this Commonwealth."  I fail to see a flaw. Indeed, the MERS system generally mirrors the separation of the mortgage and the note under Massachusetts law, as the identity of the recorded assignee of the mortgage at the Registry of Deeds often does not reflect the identity of the note holder until the note (and mortgage) are transferred to a non-member of MERS or until the note holder wishes to foreclose on the property.  "It is as if by clever design that the MERS system fits perfectly into the Massachusetts model for the separation of legal and beneficial ownership of mortgages." *Culhane*, 826 F. Supp. 2d at 371.

Third, Butler contends that "in Massachusetts, an assignment of mortgage is a transfer of an interest in land that requires an executed writing from a named Grantor to a named Grantee" and that "[t]he MERS System does not provide any executed writings to

19

assign the ownership of the mortgage independently of the
purported 'tracking' of the sale of the Butler note."  Again,
Butler conflates electronic tracking within the MERS system with
assignments made at the Registry of Deeds.  Tracking a transfer
within the MERS System does not constitute a transfer of a
mortgage under Massachusetts law.  Assignments made by MERS, by
contrast, are executed writings; such assignments are on record
in this case and attached to the Amended Complaint.  It is
difficult to comprehend this argument, because the very
assignment to which Butler objects (and which he incorporates by
reference into his Amended Complaint) is an executed writing
complying with the requirement that he invokes.

        Fourth, Butler contends that "the 'tracking' data
purportedly relied upon by the Defendant to provide an
evidentiary foundation that the Butler note was sold to the
Defendant trustee[] remains completely unauthenticated."  To the
extent that this contention relates to Butler's argument that
Deutsche Bank must here have held the note in order to have
conducted a valid foreclosure sale, I have rejected this theory
based on the prospective application of *Eaton*.  *See supra* Part
III.A.1.  To the extent that this contention relates to the
difficulty of establishing whether the MERS signatory had
authority from the owner of the mortgage to assign it, this
concern is immaterial under Massachusetts law.  An assignor is

bound by an assignment executed before a notary public by a
person purporting to hold a position such as vice president,
secretary, or assistant secretary of the entity that holds record
title of the mortgage.  G.L. c. 183, § 54B.  No further
manifestation of authorization is required.  Courts in this
district have rejected Butler's theory for the same reason.  *See,
e.g., Rosa*, 821 F. Supp. 2d at 430; *Aliberti*, 779 F. Supp. 2d at
249.

Butler has failed to advance a compelling argument in
support of the contention that an assignment from MERS must be
invalid.  This third contention also fails to provide an
actionable legal theory.

### 4.  Robo-signing

Butler alleges that Jeffrey Stephan, who signed the first
and second assignments, is a known robo-signer.  Butler alleges
that Stephan "would glance at a borrower's name, the debt owed
and a few other numbers, but simply assumed most of the
information in the files was correct."  Butler has not explained
how, even if this were the case, it would invalidate the
assignments.

G.L. c. 183, § 54B, states that an assignment that is
"executed before a notary public . . . by a person purporting to
hold the position of . . . vice president . . . of the entity
holding such mortgage . . . shall be binding upon such

entity . .  and no vote of the entity affirming such authority shall be required to permit recording." Jeffrey Stephan purported to hold the position of Vice President of MERS.  He executed the assignments before a notary public.  The second assignment is therefore binding on MERS.[5]

I do not need to reach the issue of whether robo-signing can ever invalidate an assignment or other loan-related document.  In this context, Butler fails to explain how the facts alleged are sufficient to demonstrate that any particular requirement necessary for a valid assignment has not been satisfied. Consequently, his fourth contention also fails to provide an actionable legal theory.

### 5.   Failure of the First Assignment to Identify the Trust

Butler contends that "[t]he subsequent purported assignments in the purported chain of title claimed by the Defendant Trustee retain the taint associated with the purported first assignment" which was made to "Deutsche Bank as Trustee" without identifying the relevant trust.  Butler provides no case law and no reasoning to explain why this "taint" would afflict the second assignment. To the extent that the first assignment was void for failure to identify the assignee sufficiently--and I need not address here whether this so here--the second assignment would be valid or

---

[5]  I address the first assignment below.  *See infra* Part III.A.5.  To the extent that the first assignment is valid, it too is binding on MERS pursuant to G.L. c. 183, § 54B.

invalid on its own merits.[6]

The second assignment included the full name of Deutsche Bank, identifying the trust for which Deutsche Bank was serving as trustee.  It does not suffer from insufficient identification of the assignee.  I find no support in logic or the law for Butler's theory of tainted and infectious assignments, and, consequently, Butler's fifth contention also fails to provide an actionable legal theory.

### 6.  Alleged Admission

Butler contends that Deutsche Bank admits that the first foreclosure sale may have been void.  In its motion to dismiss,

---

[6]  Although the third assignment purports to confirm and amend the second assignment, Butler provides no case law, and I am aware of none, supporting the proposition that a confirmatory assignment may alter the identity of a party to the original assignment.  Here, the third assignment purports to amend the second assignment so that the assignor is not MERS but instead "Deutsche Bank Trust Company Americas as Trustee."  The Massachusetts Supreme Judicial Court has recognized that a confirmatory assignment may confirm an earlier assignment that "is not in recordable form or bears some defect." *U.S. Nat. Bank v. Ibanez*, 941 N.E.2d 40, 55 (Mass. 2011).  A change in the identity of the assigning party is not "some defect" to be corrected.  It is an attempt to alter the assignment altogether instead of to "confirm" an earlier assignment. *Cf. id.* ("A confirmatory assignment . . . cannot confirm an assignment that was not validly made earlier . . . . Where there is no prior valid assignment, a subsequent assignment by the mortgage holder to the note holder is not a confirmatory assignment because there is no earlier written assignment to confirm.").  Consequently, I find that any effort to amend the second assignment by means of the third assignment was ineffective.  Assuming the first assignment was invalid due to the failure to identify the relevant trust, the mortgage was transferred according to the terms of the second assignment without the purported amendments of the third assignment.

Deutsche Bank states that it "later determined that the [first] foreclosure auction sale may have been void because Butler may not have received 14 days' notice of the sale as required by G.L. c. 244, § 14." It is not clear that such a statement constitutes an admission; in fact, Butler himself challenges the statement by arguing that "[t]he Defendant Trustee further neglects to provide any evidentiary foundation for such 'assumption' of defective notice" and by contending that "it is the Plaintiff's theory that such purported rescission only took place due to the evidence which came to light as a result of repeated articles in the national news media outlets regarding the defective executions associated with documents purported executed by one Jeffrey Stephan . . . ." I need not, however, decide whether the statement would constitute an admission for two reasons.

First, Deutsche Bank did not state that the sale *was* void and that the notice of sale was *not* sent. Instead, it stated that Butler "may" not have received the notice. Such an "admission" is not an admission of a void foreclosure, but instead an explanation that out of concern that the foreclosure *might* be void, Deutsche Bank re-foreclosed.

Second, Butler makes no allegations regarding the notice requirements of G.L. c. 244, § 14, in his Amended Complaint. The Amended Complaint alleges that the foreclosure was invalid because the foreclosing entity did not have the authority to

24

exercise the power of sale.  It does not allege that the steps provided in the power of sale were not followed.  Because a failure to comply with the notice requirement is not alleged in the Amended Complaint, it is not at issue in the motion.[7]

Consequently, Butler's sixth and final contention also fails to provide an actionable legal theory.

### 7.   Conclusion Regarding Validity of Foreclosures

Because none of Butler's theories as to the invalidity of either the assignments or the foreclosures is actionable, I will dismiss this action.  Nevertheless, in the next two sections I take up two additional bases for dismissal pressed by defendants. Although I do not find either of the bases supportable, I examine them in the interest of completeness.  With respect to the ground addressing the prerequisites to bringing a G.L. c. 93A action, *see* Section III.C. *infra*, this examination provides the opportunity to explain why further analysis has caused me to abandon a position I previously, and I now find erroneously, have taken.

---

[7]  By contrast, had Deutsche Bank brought an action for the deficiency, the potential invalidity of the first foreclosure due to a failure to comply with the notice requirements would have been at issue.  Deutsche Bank would have had to show which foreclosure sale was valid in order to demonstrate which price was paid (the property was sold at two different prices at the two different auctions) and what deficiency consequently remained owing.  In the context of Butler's Amended Complaint and Deutsche Bank's motion to dismiss, however, the pleading burden is the opposite, and Butler has not alleged the facts necessary to maintain his action.

**B.    *Request to Set Aside the Foreclosure***

At the threshold, Deutsche Bank contends that because Butler asks for damages as relief for his wrongful foreclosure claims, he cannot request this Court to set aside the foreclosure.  As support for this proposition, Deutsche Bank cites *Alpino v. JPMorgan Chase Bank, National Association*, 1:10-12040-PBS, 2011 WL 1564114, at *7 (D. Mass. April 21, 2011), and *Cambridge Savings Bank v. Cronin*, 194 N.E. 289, 290 (Mass. 1935).  These cases hold that "[a]n action of tort, and a proceeding to set aside the foreclosure, are alternative and inconsistent remedies." *Cambridge Sav. Bank*, 194 N.E. at 290.  Each relies on *Rogers v. Barnes*, 47 N.E. 602 (Mass. 1897),[8] which explains that a plaintiff in a wrongful foreclosure action cannot "recover both the property and full damages for the conversion or misappropriation of it, but if he recover judgment for full damages, and they are paid, the title to the property passes to the wrongdoer and his grantees." *Roger*, 47 N.E. at 604.

In context, it is clear that each of these decisions requires a mortgagor to choose if he wants to set aside the foreclosure and regain his property or collect damages for the worth of the property lost.  These cases are inapposite here.  In

---

[8]   *Cambridge Savings Bank v. Cronin*, 194 N.E. 289, 290 (Mass. 1935), relies on *O'Brien v. Logan*, 128 N.E. 878, 879 (Mass. 1920), which in turn relies on *Rogers v. Barnes*, 47 N.E. 602 (Mass. 1897).

this case, Butler asked not for "full damages for the conversion or misappropriation" of his property, but instead for the rent amounts he did not collect due to Deutsche Bank's alleged wrongful foreclosures.[9]  Lost rent is not a replacement for the property itself; the type of inconsistency identified in *Alpino* and *Cambridge Savings Bank* does not exist here.  Consequently, I would not deny Butler's attempt to set aside the foreclosure of the property at Town Hill Road on this basis.[10]

**C.   *G.L. c. 93A DEMAND LETTER***

In Count I, Butler alleges various violations of G.L. c. 93A.  The statute requires:

> At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.

G.L. c. 93A, § 9(3).  The dispatch of this demand letter "is not merely a procedural nicety, but rather, 'a prerequisite to suit.'"  *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 19 (1st Cir. 2004) (quoting *Entrialgo v. Twin City Dodge, Inc.*, 333

---

[9]   Neither party has addressed, and so I do not reach, whether this type of incidental or consequential damages is available as a remedy in a wrongful foreclosure action.

[10]   It is not entirely clear from the Amended Complaint whether Butler requests relief in the form of setting aside the foreclosure sale.  I need not reach that issue, nor consider whether I would permit Butler to amend the Amended Complaint yet again in order to spell out the relief requested more fully, because I dismiss the Amended Complaint on other grounds.

N.E.2d 202, 204 (Mass. 1975).  Compliance with the requirement
must be specifically alleged in the complaint; failure to make
such allegations is a ground for dismissal of the claim.  *Id.;*
*City of Boston v. Aetna Life Ins. Co.*, 506 N.E.2d 106, 109 (Mass.
1987).

In the Amended Complaint, Butler does not allege compliance
with the demand letter requirement.  Deutsche Bank contends that
Count I should be dismissed for that reason.  Butler contends on
two bases that compliance with the demand letter requirement is
unnecessary in the instant case.

First, Butler contends that the foreclosures conducted by
Deutsche Bank "forced" him to file a "defensive" lawsuit to
challenge the foreclosure sale.  G.L. c. 93A includes an
exception to the demand letter requirement where "the claim is
asserted by way of counterclaim or cross-claim . . . ."  G.L. c.
93A, § 9(3).  Butler argues that because this action is in
response to Deutsche Bank's non-judicial foreclosure sale, it is
a defensive counterclaim.

I disagree.  A non-judicial foreclosure sale is precisely
that--non-judicial--and Deutsche Bank has not initiated a lawsuit
against Butler.  Many, if not most, lawsuits are filed in
response to actions of the defendants to which the plaintiffs
object; that does not transform such lawsuits into "defensive"
lawsuits and does not justify characterizing the claims in those

lawsuits as "counterclaims."  Butler is the plaintiff in this lawsuit.  His claims are not counterclaims and the "counterclaims" exception to the G.L. c. 93A, § 9(3), demand letter requirement does not apply.

Second, Butler contends that Deutsche Bank neither maintains a place of business nor keeps assets within Massachusetts.  The statute includes a second exception to the demand letter requirement where "the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth . . . ."  G.L. c. 93A, § 9(3).  Deutsche Bank argues that this exception does not apply because it owns mortgages in the Commonwealth, including the mortgage at issue in this case, and because mortgages are assets for the purposes of G.L. c. 93A.

G.L. c. 93A provides no definition for the term "asset." Neither party identifies any case law defining the term within the context of G.L. c. 93A, and I am not aware of any case law fully analyzing the subject.  As a general matter, however, an asset is "[a]n item that is owned and has value." *Black's Law Dictionary* 134 (9th ed. 2009).

Several cases from this district do support the proposition that a mortgage is an "asset" for the purposes of G.L. c. 93A, § 9(3).  *See Sumner v. Mortg. Elec. Registration Sys.*, Civil Action No. 11-11910-DJC, 2012 WL 3059429, at *7 (D. Mass July 26, 2012); *Arazi v. Saxon Mortg. Servs., Inc.*, Civil Action No. 11-

29

11356-RGS, 2011 WL 5519914, at *3 (D. Mass. Nov. 14, 2011); *Okoye*
*v. Bank of N.Y. Mellon*, Civil Action No. 10-11563-DPW, 2011 WL
3269686, at *4 (D. Mass. July 28, 2011);[11] *In re Anderson*, No.
04-44554-JBR, 2006 WL 2786974, at *1 (Bankr. D. Mass. Sept. 26,
2006).  Upon further reflection, I find these cases unpersuasive.
*Sumner* merely cited *Arazi* and *Okoye*.  *Sumner*, 2012 WL 3059429, at
*7.  *Arazi* merely noted that a mortgage is legal title and cited
*Okoye*.  *Arazi*, 2011 WL 5519914, at *3.  In *Okoye*, I merely cited
*In re Anderson*.  *Okoye*, 2011 WL 3269686, at *4.  *In re Anderson*
stated that "[t]he Defendants argue that the mortgages secured by
property located within the Commonwealth are 'assets within the
commonwealth,' an argument which the Plaintiff does not address,"
*In re Anderson*, 2006 WL 2786974, at *1, and proceeded to hold
that a mortgage is an asset for the purposes of G.L. c. 93A
essentially as a matter of ipse dixit.

   The cited cases fail fully to consider the status of a
mortgage under Massachusetts law.  In Massachusetts, when a
mortgage and note are separated, "the holder of the mortgage
holds the mortgage in trust for the purchaser of the note, who
has an equitable right to obtain an assignment of the

---

[11]  Although I decided *Okoye v. Bank of New York Mellon*,
Civil Action No. 10-11563-DPW, 2011 WL 3269686 (D. Mass. July 28,
2011), my view of how the Supreme Judicial Court would likely
resolve this issue has changed in light of the Supreme Judicial
Court's recent decision in *Eaton v. Federal National Mortgage
Association*, 969 N.E.2d 1118 (Mass. 2012).

mortgage . . . ." *U.S. Bank Nat. Ass'n v. Ibanez*, 941 N.E.2d 40,
54 (Mass. 2011).  Consequently, "a mortgage separated from the
underlying debt that it is intended to secure is 'a mere
technical interest.'" *Eaton*, 969 N.E.2d at 1124 (quoting *Wolcott
v. Winchester*, 81 Mass. 461 (1860)).  "To one who has not the
debt, [the mortgage] is of no value as property, as it could at
most be only resorted to as a trust for the benefit of the holder
of the note." *Id.* (quoting *Sanger v. Bancroft,* 78 Mass. 365, 367
(1859)).

    Because a mortgage alone has no value under Massachusetts
law, I believe that the Supreme Judicial Court would hold that a
mortgage alone is not an "asset" for the purposes of G.L. c.
93A.[12]  Deutsche Bank cannot show at the motion to dismiss stage
that it holds the note secured by the mortgage or has any other
property in the Commonwealth.  For the purposes of this motion, I

---

    [12] For his part, Butler argues that a mortgage is not an
asset because it is only a fee subject to defeasance on the
mortgagor's performance of his obligation.  I am not persuaded
that a mortgage, securing a note held by the mortgagee, is not an
asset solely because it is subject to defeasance.  Massachusetts
is a "title theory" state; in the Commonwealth, "a mortgage is a
transfer of legal title in a property to secure a debt." *Ibanez*,
941 N.E.2d at 51.  "[F]or the purpose of securing the debt[, ]
the mortgagee is to be considered owner of the property." *Negron
v. Gordon*, 366 N.E.2d 241, 244 (Mass. 1977).  A mortgage and note
*in combination* are a property interest (albeit one subject to
some limitation) having value.  As a result of *Eaton*, it is
unlikely that foreclosure litigation will in the future proceed
in the absence of the combination of the mortgage and note.
Thus, in the future such combinations should provide the in-state
asset necessary for c. 93A claims.

cannot find that Deutsche Bank has assets in the Commonwealth.[13]
Consequently, I would not dismiss Count I for failure to satisfy
the demand letter requirement of G.L. c. 93A, § 9(3).

### IV. CONCLUSION

For the reasons set forth above, I GRANT Deutsche Bank's Motion
to Dismiss (Dkt. No. 11).


*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE

---

[13] In Count I, Butler also alleges that Deutsche Bank
wrongfully "[c]reat[ed] the appearance that GMAC was the
'creditor' of Plaintiff." Butler alleges no facts in support of
this charge. Nor does Butler allege any damage resulting from
the "appearance" of GMAC. Butler also alleges that Deutsche Bank
wrongfully "[c]reat[ed] the appearance . . . that legally valid
'assignments' took place." Butler does not allege any damage
resulting from the assignments (when considered as a separate
matter from the foreclosures). Consequently, to the extent that
these claims are asserted as bases of the G.L. c. 93A claim
separate from the basis that Deutsche Bank wrongfully foreclosed,
they are dismissed.